

**NUMBER 13-22-00348-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**TRINITY HEALTHCARE, LLC,**                               **Appellant,**

**v.**

**LILIAN PEACOCK, INDIVIDUALLY
AND ON BEHALF OF THE ESTATE OF
GLADYS CECILIA KEELS,**                            **Appellee.**

---

**On appeal from the 329th District Court
of Wharton County, Texas.**

---

**MEMORANDUM OPINION**

**Before Justices Benavides, Tijerina, and Peña
Memorandum Opinion by Justice Benavides**

This is an interlocutory appeal from the trial court's denial of appellant Trinity Healthcare, LLC's (Trinity's) motion to dismiss appellee Lilian Peacock's healthcare liability claims, brought in her individual capacity and on behalf of the estate of Gladys Cecilia Keels. By two issues, which we analyze as one, Trinity contends that the trial court

abused its discretion by denying its motion to dismiss because Peacock's expert report was served more than 120 days after Trinity filed its answer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). We affirm.

## I. BACKGROUND

On June 2, 2021, Peacock filed a first amended petition[1] alleging several causes of action against Trinity and co-defendant Oakbend Medical Center d/b/a Avalon Place Wharton.[2] According to Peacock's pleadings, the defendants' care and treatment of her mother, Keels, resulted in "pressure sores," "infections throughout [Keels's] body," "sepsis and septic shock," and ultimately, her death.

The parties dispute whether Trinity served Peacock with its answer. Regardless, the clerk's record reflects that on June 25, 2021, Trinity filed its answer. Attached to Trinity's answer was a certificate of service, in which counsel for Trinity certified that he served the answer "on all counsel of record electronically in accordance with the Texas Rules of Civil Procedure." However, unlike other pleadings that appear in the record, no confirmation of service was attached to the answer. *See* TEX. R. CIV. P. 21(b)(3) ("The electronic filing manager will send confirmation of service to the serving party."). On January 10, 2022, Trinity filed a motion to dismiss, alleging that Peacock did not serve an expert report within the 120 days following the filing of Trinity's answer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (requiring an expert report to be served within 120

---

[1] No original petition appears in the record.

[2] Oakbend Medical Center d/b/a Avalon Place Wharton is not a party to this interlocutory appeal.

days of the filing of the defendant's answer); *see id.* § 74.351(b) (requiring a trial court to dismiss the plaintiff's healthcare liability claims with prejudice if the deadline in § 74.351(a) is not met).

On March 11, 2022, Peacock filed a response to Trinity's motion to dismiss. Attached to this response were the affidavits of attorneys James R. Johnson and Gary G. Lyon. In Johnson's affidavit, he averred that he "never received any electronic notification via efile or any other means that Trinity . . . had filed an answer in this case." Johnson stated that he "made several calls to the Wharton County District Clerk" in August of 2021 to determine whether Trinity had filed an answer. He was "informed that no answer had been filed." The affidavit also listed his unsuccessful attempts to contact Trinity, such as an attempt to contact its vice-president. Johnson stated that "[i]t was not until counsel for Defendant Trinity . . . filed its motion to dismiss that [Johnson] . . . became aware of any defendant filing any answer."

Lyon's affidavit contains much of the same representations. However, Lyon also attested that in August of 2021, he "personally drove to the Wharton County District Clerk's Office to inquire as to any firm filing an answer in this case" and was "informed that no answer was on record." Both Johnson and Lyon averred that, throughout the case, they made "frequent, good-faith attempts to loca[te] any party or counsel of party who had filed an answer."

On May 2, 2022, Peacock filed and served an expert report on Trinity. The trial court held a hearing on Trinity's motion to dismiss on May 24, 2022, but no reporter's

3

record was made of the hearing. On July 18, 2022, the trial court denied Trinity's motion to dismiss. This interlocutory appeal followed. *See id.* § 51.014(a)(9).

## II. MOTION TO DISMISS

### A. Standard of Review & Applicable Law

Under the Texas Medical Liability Act (TMLA), a claimant must serve an expert report on the defendant health care provider within 120 days of the filing of the defendant's answer, unless the parties otherwise agree in writing to extend the deadline. *Id.* § 74.351(a). "Strict compliance with th[is] provision is mandatory." *Zanchi v. Lane*, 408 S.W.3d 373, 376 (Tex. 2013). If this "statute-of-limitations-type deadline" is not met, the court, upon motion by the defendant health care provider, must dismiss the claim with prejudice and award the health care provider reasonable attorney's fees and court costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *Ogletree v. Matthews*, 262 S.W.3d 316, 319–20 (Tex. 2007).

Appellate courts generally review a trial court's ruling on a motion to dismiss under § 74.351 for an abuse of discretion. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011). However, to the extent that our review involves a matter of statutory construction, the issue is a legal question that we review de novo. *See Tex. W. Oaks Hosp., L.P. v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). Our fundamental goal when interpreting a statute is to give effect to the Legislature's intent. *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). "In doing so, we look first and foremost to the plain and

4

common meaning of the statute's words and to the definitions it provides, 'unless a different meaning is apparent from the context.'" *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020). "We derive legislative intent from the statute as a whole rather than from isolated portions of it." *In re C.Y.K.S.*, 549 S.W.3d 588, 591 (Tex. 2018). "Words and phrases 'shall be read in context and construed according to the rules of grammar and common usage.'" *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014) (quoting TEX. GOV'T CODE ANN. § 311.011).

"We presume the Legislature intended a just and reasonable result by enacting the statute." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) (citing TEX. GOV'T CODE ANN. § 311.021(3)). "[W]e endeavor to afford meaning to all of a statute's language so none is rendered surplusage, but we remain ever mindful of our obligation to avoid constructions that give rise to constitutional infirmities." *In re Tex. Educ. Agency*, 619 S.W.3d 679, 688 (Tex. 2021) (orig. proceeding) (footnote omitted). "When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *Hughes*, 246 S.W.3d at 626. "Only when there is more than one reasonable interpretation of the statutory text, or when its plain meaning leads to absurd or nonsensical results, may we look beyond that language for assistance in determining intent." *Hegar*, 605 S.W.3d at 41.

## B.   Analysis

Trinity argues that the plain language of the statute does not require a defendant's answer to be served for § 74.351(a)'s clock to start running. We begin our analysis by

5

looking at the statute itself.

> In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed or a later date required under [§] 74.353, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a).

Trinity argues that the operative word here is "filed." "Filed" is not defined by the TMLA. However, the TMLA provides that "[a]ny legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as is consistent with the common law." *Id.* § 74.001(b). "[A] document is 'filed' when it is tendered to the clerk, or otherwise put under the custody or control of the clerk." *Jamar v. Patterson*, 868 S.W.2d 318, 319 (Tex. 1993) (per curiam). Trinity contends that the term "filed" must be construed literally—the deadline to serve an expert report commences when a defendant files their answer, regardless of whether the defendant served the answer. However, "while we must necessarily construe key terms, we do so in the context of the statute as a whole, not in isolation." *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 183 (Tex. 2022). Section 74.351(a) explains that the expert report clock starts when the defendant files its "original answer." But the TMLA does not define what an "original answer" is, nor does it explain what is required of a defendant's answer, other than that it must be filed. *See* TEX.

6

CIV. PRAC. & REM. CODE ANN. § 74.351(a). In other words, we must look elsewhere to determine what the requirements are for an "original answer."

Health care liability claims are civil actions. All civil actions are governed by the rules of civil procedure unless a specific exception applies. TEX. R. CIV. P. 2. The rules of civil procedure provide that

> [e]very pleading, plea, motion, or application to the court for an order, whether in the form of a motion, plea, or other form of request, unless presented during a hearing or trial, must be filed with the clerk of the court in writing, must state the grounds therefor, must set forth the relief or order sought, *and at the same time* a true copy must be served on all other parties, and must be noted on the docket.

*Id.* R. 21(a) (emphasis added). The rules of civil procedure further provide that a party may offer proof that a particular document required to be served was not received, "and upon so finding, the court may extend the time for taking the action required of such party or grant such other relief as it deems just." *Id.* R. 21a(e).

The TMLA contains a provision that reads: "In the event of a conflict between this chapter and another law, including a rule of procedure or evidence or court rule, this chapter controls to the extent of the conflict." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.002(a). In *Albertson's, Inc. v. Sinclair*, the supreme court analyzed a similar provision in the labor code which "dictates that when the Texas Rules of Civil Procedure conflict with the procedures in subchapter G, subchapter G controls." 984 S.W.2d 958, 960 (Tex. 1999) (per curiam) (citing TEX. LAB. CODE ANN. § 410.305). The supreme court held that this provision "evinces the Legislature's intent that the Rules of Civil Procedure control unless they conflict with subchapter G." *Id.* Based on the plain language of § 74.002(a),

7

we similarly conclude that the rules of civil procedure control here to the extent there is not a conflict with the TMLA. *See id.*

In construing § 74.351 as a whole, we hold that it incorporates the same requirements of service and notice as the rules of civil procedure. One of § 74.351(a)'s neighbors, § 74.351(c), permits courts to grant one thirty-day extension when elements of a timely-served expert report have been found deficient. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). This provision explains that "[i]f the claimant does not receive notice of the court's ruling granting the extension until after the applicable deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice." *Id.* Instead of demonstrating an intent to ignore service and notice requirements, this provision indicates that the Legislature wished to prevent deadlines from lapsing when claimants did not receive notice that those deadlines were looming. *See id.* And while § 74.351(a) does not refer to the same requirement of notice as § 74.351(c), neither does it suggest a basis for deviating from that requirement. *See In re Conner*, 458 S.W.3d 532, 535 (Tex. 2015) (per curiam) (orig. proceeding) ("And while Rule 165a(2) does not refer to Rule 165a(1)'s procedural requirements, including notice and a hearing, neither does it suggest a basis for deviating from those procedures."); *see also Petitt v. Laware*, 715 S.W.2d 688, 691 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) ("[A]n action taken by the court that results in a final dismissal of [a] plaintiff's cause of action without proper notice involves more than a mere violation of the rules of practice and procedure; such action will constitute abuse of discretion.").

8

We conclude that Trinity was required to serve Peacock with its answer at the same time it filed its answer. *See* TEX. R. CIV. P. 21(a). Nonetheless, Trinity argues there can be no justification of the trial court's denial of its motion to dismiss as "[t]he only extension of the 120-day period authorized by [§] 74.351 is by written agreement of the parties, which did not occur in this case."

"The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011). Additionally, the "Legislature's directive that the civil justice system repel weak claims stands alongside its insistence that malpractice be penalized." *CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 234 (Tex. 2013) (citing *Hernandez v. Ebrom*, 289 S.W.3d 316, 329 (Tex. 2009) (Jefferson, C.J., dissenting)). "It is quite an elementary rule that, once you have ascertained the purpose of a legislative act, the meaning of the words used may be restricted or enlarged, or disregarded, in order to give it the meaning which effectuates its manifest purpose." *State v. Standard Oil Co.*, 107 S.W.2d 550, 559 (Tex. 1937); *see Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 134 (Tex. 1994); *Lunsford v. City of Bryan*, 297 S.W.2d 115, 117 (Tex. 1957). Trinity's literal interpretation of § 74.351(a) does nothing to further the purpose of the expert report requirement but, in fact, thwarts its purpose by requiring Peacock's claim to be dismissed regardless of its merit and by encouraging attorneys to ignore the rules of civil procedure. *See Scoresby*, 346 S.W.3d at 554; *Lidji*, 403 S.W.3d at 234. Thus, we must reject Trinity's construction. *See Barshop v. Medina Cnty. Water Conservation Dist.*,

925 S.W.2d 618, 629 (Tex. 1996) (explaining that the supreme court has recognized that a "too literal construction of a statute, which would prevent the enforcement of it according to its true intent, should be avoided").

It stands to reason that if the expert report deadline is a "statute-of-limitations-type deadline," *see Ogletree*, 262 S.W.3d at 319–20; *Rinkle v. Graf*, 658 S.W.3d 821, 825 (Tex. App.—Houston [14th Dist.] 2022, no pet.), then it is subject to the same or similar equitable doctrines that concern statutes of limitations. "It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft limitations periods in light of this background principle." *Young v. United States*, 535 U.S. 43, 49–50 (2002) (citations and quotation marks omitted). Equitable tolling is generally permitted in situations "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* at 50 (quoting *Irwin v. Dep't of Veteran Affairs*, 498 U.S. 89, 96 (1990)). This principle is also "appropriate in other cases." *Id.*

The Texas Supreme Court has acknowledged that the expert report deadline can be tolled by a defendant's actions or rather, the lack thereof. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671 (Tex. 2008) ("Accordingly, when SADI failed to timely answer the Gardners' suit by the Monday following the expiration of twenty days after it was served, *see* TEX. R. CIV. P. 99(b), the statutory period for serving it with an expert report

10

was tolled until such time as SADI made an appearance."); *cf. Lidji*, 403 S.W.3d at 234 (tolling the expert report deadline when claimants voluntary non-suited their claim before the expert report deadline lapsed). Here, Peacock relied on Trinity's lack of service, whether intentional or accidental, to her detriment, and we conclude the rules of civil procedure provide the trial court with a discretionary remedy to toll the expert report deadline in this scenario. *See* TEX. R. CIV. P. 21a(e); *see also Young*, 535 U.S. at 50 (explaining that equitable tolling is permitted "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass").

We should not interpret a statute in a manner that unnecessarily creates a conflict between it and other statutes or rules. *Tex. Dep't of Pub. Safety v. J.H.J.*, 274 S.W.3d 803, 809 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Trinity does not acknowledge the discretionary provision of rule 21a(e) nor does it suggest that this provision conflicts with § 74.351(a). We conclude that the two provisions do not conflict. Rather, rule 21a(e) provides the trial court with a method by which it may toll the running of the expert report deadline in the event of non-compliance with the rules concerning service. *Cf. Univ. of Tex. Med. Branch at Galveston v. Callas*, 497 S.W.3d 58, 64 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("Rule 4 does not extend the 120-day deadline, but simply provides the method by which the 120 days are calculated."). Therefore, the trial court was authorized to toll the expert report deadline if it found that Peacock was not served with Trinity's answer. *See* TEX. R. CIV. P. 21a(e).

Trinity argues that the certificate of service included with their answer is prima facie

11

evidence that notice was given. *See id.* "A certificate of service is prima facie evidence of the fact of service, but nothing in the rule precludes any party from offering proof that the notice or instrument was not received, or, if service by mail, that it was not received within three days." *In re E.A.*, 287 S.W.3d 1, 5 (Tex. 2009) (cleaned up). Here, Peacock's attorneys presented evidence in the form of affidavits to demonstrate that they never received a copy of Trinity's answer. *See id.*; *Strobel v. Marlow*, 341 S.W.3d 470, 476 (Tex. App.—Dallas 2011, no pet.) ("Receipt is an element of service."). "When there is no reporter's record made and there are no findings of fact, we assume that the trial court heard sufficient evidence to make all necessary findings in support of its judgment." *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see Rosemond*, 331 S.W.3d at 766. Thus, based on the conflicting evidence in the record, we must conclude that the trial court found in favor of its judgment. *See Nicholson*, 226 S.W.3d at 583.

Because the record supports an inference that the trial court found that Peacock was not served with Trinity's answer and received no notice of that document, be it actual or constructive notice, until Trinity filed its motion to dismiss, we conclude the trial court did not err in denying Trinity's motion to dismiss. *See* Tex. R. Civ. P. 21a(e) (permitting the trial court to "extend the time for taking the action required of [a] party" upon finding that a document was not received by that party); *see also Prestwood ex rel. Estate of Prestwood v. Settle*, No. 03-07-00111-CV, 2008 WL 537159, at *5 (Tex. App.—Austin Feb. 28, 2008, pet. denied) (mem. op.) (analyzing the prior version of § 74.351(a), which

12

required a plaintiff to serve an expert report within 120 days of filing their petition, and stating that "[i]f section 74.351 had been drafted such that a claimant's 120-day period would begin to run once he is served with the defendant physician's answer, for example, then the Prestwoods might have a cognizable claim that rule 21a extends the deadline for serving the expert reports").

We overrule Trinity's sole issue on appeal.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
4th day of May, 2023.